UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KRIS J. BOHNENBERGER, and | ) | |
| GEICO MARINE INSURANCE COMPANY | ) | |
| f/k/a SEAWORTHY INSURANCE COMPANY | ) | |
| as subrogee of ANDREW KLANE | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO.  16-11368-LTS |
| MCBC HYDRA BOATS, LLC, and | ) | |
| PLANTATION BOAT MART | ) | |
| AND MARINA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON DEFENDANT
## PLANTATION BOAT MART AND MARINA, INC.'S MOTION
## TO DISMISS FOR LACK OF PERSONAL JURISDICTION

August 18, 2017

DEIN, U.S.M.J.

### I.  INTRODUCTION

Plaintiff Kris J. Bohnenberger ("Bohnenberger") is a resident of Massachusetts and,

along with plaintiff Geico Marine Insurance Company f/k/a Seaworthy Insurance Company as

subrogee of Andrew Klane ("Geico"), has brought this action against Plantation Boat Mart and

Marina, Inc. ("Plantation").[1] This action arises out of the sale of a recreational motorboat (the

"vessel") by Plantation to friends of Bohnenberger, Richard and Terry Smith ("the Smiths"), for

Bohnenberger's use. The plaintiffs allege that due to the vessel's faulty wiring, the vessel caught

---

[1] The plaintiffs also named as defendant MCBC Hydra Boats, LLC. However, that defendant was
dismissed without prejudice by stipulation pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) on October 19, 2016.

fire at Bohnenberger's dock in Massachusetts. The fire destroyed the vessel and a second boat tied to the same dock, the "Grady White" owned by Andrew Klane, and also caused severe damage to the dock itself. By their Second Amended Complaint ("SAC"),[2] the plaintiffs have brought suit pursuant to this court's admiralty jurisdiction, 28 U.S.C. § 1333, and asserted claims against the defendant for negligence (Count I), strict liability (Count II), and breach of warranty (Count III). (Docket No. 29 at Ex. 6).[3]

This matter is before the court on "Defendant, Plantation Boat Mart and Marina Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction" (Docket No. 25). By its motion, Plantation contends that all of the plaintiffs' claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because Plantation lacks sufficient contacts with Massachusetts to support this court's exercise of personal jurisdiction over it. As described below, this court finds that Plantation is subject to this court's jurisdiction. Accordingly, and for all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Plantation's motion to dismiss for lack of personal jurisdiction be DENIED.

---

[2] Plaintiffs titled this document the "Amended Complaint" but refer to it in their brief as the "Second Amended Complaint." As such, the court will refer to it as the Second Amended Complaint or "SAC."

[3] The parties agreed at the hearing before this court on April 4, 2017 that the operative complaint is the Second Amended Complaint, attached as Exhibit 6 to Plaintiffs' "Opposition to Plantation Boat Mart and Marina, Inc.'s Motion to Dismiss and Cross Motion to Amend the Complaint" (Docket No. 29). As such, this court applies the parties' arguments related to personal jurisdiction to the Second Amended Complaint.

## II.  STATEMENT OF FACTS

### Standard of Review of Record

"On a motion to dismiss for want of personal jurisdiction, the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009), and cases cited. "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the 'prima facie' standard governs its determination." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under this standard, plaintiffs must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." Id. (quotations and citation omitted).  Thus, to meet their burden in this case, plaintiffs must "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). The court will "take the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts." Id. It will "then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 24 (1st Cir. 2005) (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002)) (additional quotations and citation omitted).

Applying this standard to the instant case, the relevant facts are as follows.[4]

---

[4] The facts are derived from the following materials: (1) the SAC; (2) the affidavit of Elias de la Torre III ("de la Torre Aff."), which is attached as Exhibit 1 to Plantation's Motion to Dismiss (Docket No. 25); (3) the Supplemental Affidavit of Elias de la Torre III ("de la Torre Suppl. Aff.") (Docket No. 35); (4) the affidavit of Richard Smith ("Smith Aff.") (Docket No. 29 Ex. 4); (4) the affidavit of Kris Bohnenberger

**The Parties**

Kris Bohnenberger is a resident of Mashpee, Massachusetts (Bohnenberger Aff. ¶8) and is friends with Richard and Terry Smith, a married couple who reside in Falmouth, Massachusetts. (Smith Aff. ¶ 1; Bohnenberger Aff. ¶ 19).[5] Plaintiff Geico is a Virginia corporation with a principal place of business in Alexandria, Virginia. (SAC ¶ 2). Plantation Boat Mart & Marina, Inc., a boat dealership, is a Florida corporation with a principal place of business in Tavernier, Florida. (de la Torre Aff. ¶¶ 6, 8). There is no dispute that Plantation is not registered to do business in Massachusetts (Id. ¶ 11); has no registered agent for services of process in Massachusetts (Id. ¶ 13); maintains no office or bank account in Massachusetts (Id. ¶¶ 10, 22); has never had a mailing address or telephone listing in Massachusetts (Id. ¶ 16); does not own or lease, have interest in or use or possess any real or personal property in Massachusetts (Id. ¶ 17); has conducted no corporate meetings in Massachusetts (Id. ¶ 15); and has had no officer or director who was a resident of Massachusetts while holding that position. (Id. ¶ 14).

**Contract Negotiations**

In February 2013, Bohnenberger attended the Miami Boat Show. (Bohnenberger Aff. ¶ 3). There he spoke with and provided his email address to an individual who identified himself as the President of Hydrasports Custom Boats, LLC. (Id. ¶ 4). On March 9, 2013,

---

("Bohnenberger Aff.") and the exhibit attached thereto (Bohnenberger Aff. Ex. A) (Docket No. 29 Ex. 3); and other attachments to Plaintiffs' Opposition (Pl. Opp. Ex. __) (Docket No. 29).

[5] The Smiths are plaintiffs in a related action against Plantation. See Richard Smith and Terry Smith v. Plantation Boat Mart and Marina Inc., C.A. No. 16-11369-LTS.

4

Bohnenberger received an email at home in Massachusetts from a Plantation salesperson named Scott Warnike ("Warnike"). (Id. ¶ 8). Warnike wrote that he had heard from the President of Hydrasports that Bohnenberger "ha[d] some interest in the New 3400 CC [boat]." (Id. ¶ 9). Warnike's email was the first communication between Plantation and Bohnenberger. (Id. ¶ 8). Over the course of March and April 2013, Warnike and Bohnenberger negotiated the terms of an agreement for the sale of a 2013 Hydrasports 3400 cc boat (the "vessel") by email and phone. (Id. ¶ 10; Bohnenberger Aff. Ex. A). At least 14 emails were exchanged and one phone call was made. (Id. Ex. A). During the negotiations, Warnike offered to have Plantation fly Bohnenberger to Florida to "sea trial" the vessel. (Bohnenberger Aff. ¶ 11). Warnike agreed to take Bohnenberger's current boat as a "trade in" to offset the price of the vessel (Id. ¶ 12) and offered to arrange for the transport of Bohnenberger's trade-in boat from Massachusetts to Florida, and the transport of the vessel from Florida to Massachusetts. (Id. ¶¶ 13-14). Bohnenberger and Warnike ultimately agreed that Bohnenberger would arrange for the transport of the boats and Plantation would reduce the purchase price accordingly. (Id. ¶ 14). Bohnenberger and Warnike also agreed that the vessel would be outfitted with a larger "live well" and an autopilot system. (Id. ¶ 23; Bohnenberger Aff. Ex. A). The installation of the larger live well required installation of either a larger or an additional seawater pump. (Bohnenberger Aff. ¶ 24).

Bohnenberger paid a $25,000 deposit for the vessel, and Warnike referred Bohnen-berger to a finance company in order to obtain financing for the rest of the purchase. (Id. ¶¶ 15-16). When Bohnenberger was denied financing, Warnike suggested that Bohnenberger have a friend apply for the financing and purchase of the vessel. (Id. ¶ 18). Bohnenberger asked

the Smiths to obtain financing for the vessel, and the Smiths ultimately agreed. (Smith Aff. ¶¶ 2, 5). Bohnenberger gave Warnike the Smiths' contact information. (Bohnenberger Aff. ¶ 20). At some point before the sale of the vessel, Warnike and Richard Smith spoke over the phone. (Smith Aff. ¶ 3). During this call, Warnike represented that the vessel was "a very good boat" and that "any and all warranty work would take place in Massachusetts." (Id.). The Smiths' financing was approved (Id. ¶ 6). Warnike emailed Bohnenberger a sales contract to be executed by Richard Smith. (Bohnenberger Aff. ¶ 21). The plaintiffs have alleged that on April 29, 2013, Richard Smith executed the buyer's agreement for the vessel at his home in Falmouth, Massachusetts "and forwarded it back to Plantation." (SAC ¶ 34). The vessel, installed with the larger live well, was to be fully operational and ready for pick up in Florida on the agreed-upon date of May 15, 2013. (Bohnenberger Aff. ¶ 25).

When Bohnenberger and Richard Smith arrived at Plantation on or about 6:30 a.m. on May 15, 2013, the vessel was not ready for pick up. (Smith Aff. ¶ 8). The live well installation was not complete, the autopilot was not operational, and Plantation employees were working on the vessel. (Id. ¶¶ 8-9). While Bohnenberger and Richard Smith waited, Warnike told Richard Smith again that the vessel was "a great boat" and that Plantation "was going to service the boat . . . in Massachusetts." (Id. ¶ 11). At 8:45 p.m., the vessel was ready to be transported back to Massachusetts, but the live well installation was still not complete and the autopilot system was not operational. (Id. ¶ 13). Warnike promised to send a Plantation technician to Massachusetts to complete the work. (Id. ¶14).

**Repairs to the Vessel**

Three days later, a Plantation employee named Kyle Rosenblatt ("Rosenblatt") arrived in Mashpee, Massachusetts to make repairs to the boat. (Bohnenberger Aff. ¶ 31). Rosenblatt told Bohnenberger that he was the Plantation technician who would "fly around the country making repairs to Hydrasport boats sold by Plantation" and that "while he was in Massachusetts" he had "stopped at another harbor" to make repairs to another Hydrasport. (Bohnenberger Aff. ¶ 37). Rosenblatt worked on the vessel for two days (Id. ¶ 32) during which time he worked "with wiring components" and had "every panel open, inside and outside of the center console [of the vessel], exposing electrical wiring." (Id. ¶ 33). When Rosenblatt could not make the autopilot functional, Plantation arranged for Marine Electronic Installers ("MEI"), a subcontractor of Plantation[6], to service the vessel in Mashpee, Massachusetts, in order to try to make the autopilot work properly. (Id. ¶¶ 38-40). When the representative from MEI was unable to fix the autopilot, Plantation arranged for Bosun's Marine, in Mashpee, Massachusetts, to fix the autopilot. (Id. ¶ 41-43). Bosun's Marine was eventually successful in making the autopilot functional. (Id. ¶ 44).

Later, Plantation continued to maintain contact with Bohnenberger and the vessel in Massachusetts. In March 2014, an issue arose with the boat's spreader lights, and in response, Plantation shipped replacements to Bohnenberger's Massachusetts home. (Id. ¶¶ 46-48). In April 2014, Bohnenberger informed Plantation about mold and/or discoloration on the vessel's seat cushions, and Plantation coordinated the replacement of the cushions by three local Massachusetts companies – Bosun's Marine in Mashpee, Massachusetts; Shamrock Boat Works

---

[6] See Deposition of Elias de la Torre III (Pl. Opp. Ex. 1 at 47).

of Waquoit, Massachusetts; and Ocean Designs, Inc. of East Falmouth, Massachusetts. (Id. ¶¶ 49-51).

### The Fire[7]

On October 11, 2015, the vessel was tied to Bohnenberger's dock in Massachusetts and was connected to electrical shore power. (See SAC ¶¶ 40-41). At approximately 11:35 a.m., a wiring component on the vessel allegedly malfunctioned, causing an electrical short, which in turn ignited a fire. (Id. ¶¶ 42-43). The plaintiffs allege that the electrical short occurred between two wires that were not properly installed. (Id. ¶ 42). The fire destroyed the vessel and personal property on it, and spread to Bohnenberger's dock and the Grady White which was also tied to the dock. (Id. ¶¶ 44-46). The Grady White, which was owned by Andrew Klane and insured by Geico, was destroyed by the fire. (Id. ¶ 47; 50). The dock and its electrical system sustained severe fire-related damage. (Id. ¶ 49). Inspections after the fire revealed that the fire on the vessel started in the area of the battery switches located in the forward section of the center console of the vessel. (Id. ¶¶ 53-54).

Additional facts will be provided below where appropriate.

### III.  ANALYSIS

As described above, the plaintiffs have brought suit pursuant to this court's admiralty jurisdiction and have asserted claims against the defendant for negligence (Count I), strict liability (Count II), and breach of warranty (Count III). See SAC. For the reasons that follow

---

[7] The cause of the fire is disputed and will be the subject of discovery.  It is undisputed, however, that the fire occurred in Massachusetts.  For present purposes, the court gives "credence to the plaintiff's version of genuinely contested facts" and accepts the allegations of the SAC relating to the cause of the fire.  Baskin-Robbins Franchising LLC, 825 F.3d at 34.

below, this court finds that the plaintiffs have made a *prima facie* showing of personal jurisdiction over Plantation. Accordingly, this court recommends that the motion to dismiss be DENIED pursuant to Fed. R. Civ. P. 12(b)(2).

### A.    Personal Jurisdiction – Generally

Since this is an admiralty case, "the personal jurisdiction analysis includes a twist not present in diversity cases, although ultimately there is no practical difference in the way in which the Court proceeds towards its determination." Zeus Projects Ltd., et al. v. Perez Y Cia. De Puerto Rico, Inc., 187 F.R.D. 23, 28 (D.P.R. 1999).  Thus, "where a federal court's subject matter jurisdiction is based on admiralty or a federal question," as in the instant case, "the court's jurisdiction over parties is national in scope" and the Due Process Clause of the Fifth Amendment, and not the Fourteenth Amendment, controls. Id.  See also Pike v. Clinton Fishpacking, Inc., 143 F. Supp. 2d 162, 166 (D. Mass. 2001).  "[U]nder the Fifth Amendment, a plaintiff need only show that the defendant has adequate contacts with the United States as a whole, rather than with a particular state." Swiss Am. Bank, Ltd., 274 F.3d at 618.  In the instant case, there is no question that Plantation is incorporated in the United States.  (See de la Torre Aff. ¶ 6).

Nevertheless, the inquiry does not end there.  Before a federal court can exercise jurisdiction over a defendant in an admiralty case, the defendant must be amenable to being served with process under Rule 4 of the Federal Rules of Civil Procedure. Zeus Projects Ltd., 187 F.R.D. at 28-29.  To be subject to service, the defendant must be "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]" Fed. R. Civ. P. 4(k)(1)(A).  "In Massachusetts, a court may exercise personal jurisdiction over a foreign defendant if such

jurisdiction is authorized by state statute [Mass. Gen. Laws ch. 223A, § 3] *and* its exercise does not offend the Due Process Clause of the Fourteenth Amendment." Pike, 143 F. Supp. 2d at 166. Thus, despite the fact that this case is brought in admiralty, the personal jurisdiction analysis mirrors the analysis in a diversity case. See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995) (in order to exercise personal jurisdiction over a defendant, the court must "find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause.").

The First Circuit has treated the "limits of Massachusetts's long-arm statute as coextensive with those of the Due Process Clause." Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016). Consequently, the court has been able to "sidestep the statutory inquiry and proceed directly to the constitutional analysis[.]" Daynard, 290 F.3d at 52.[8] Under the Due Process Clause, a court may exercise personal jurisdiction "over an out-of-state defendant only if that defendant has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Copia Commc'ns, 812 F.3d at 4 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)) (alteration in original; additional quotations and

---

[8] The court notes that recently, the First Circuit has "suggested that Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution." Copia Commc'ns, 812 F.3d at 4 (decided Jan. 13, 2016). More recently, however, the Massachusetts Appeals Court continued to follow Supreme Judicial Court precedent holding that the Massachusetts long-arm statute allows for "an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States," and thus analyzed only the constitutional limits of personal jurisdiction. OpenRisk, LLC v. Roston, 90 Mass. App. Ct. 1107, 59 N.E.3d 456 (Table), No. 15-P-1282, 2016 WL 5596005, at *4 (Sept. 29, 2016) (citing "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 443 (1972)). In light of the Massachusetts precedent on this issue, this court "sidestep[s] the statutory inquiry and proceed[s] directly to the constitutional analysis[.]" Daynard, 290 F.3d at 52.

citation omitted).  Accordingly, "[t]he accepted mode of analysis for questions involving

personal jurisdiction concentrates on the quality and quantity of the potential defendant's

contacts with the forum." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288

(1st Cir. 1999).  "Jurisdiction is proper . . . where the contacts proximately result from actions by

the defendant *himself* that create a substantial connection with the forum State." Asahi Metal

Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cty., 480 U.S. 102, 109, 107 S.Ct. 1026, 1030, 94 L.Ed.

2d 92 (1987) (punctuation and emphasis in original; internal quotation marks and citations

omitted).

"Personal jurisdiction may be either general or specific." Cossaboon v. Maine Med. Ctr.,

600 F.3d 25, 31 (1st Cir. 2010).  "General jurisdiction broadly subjects the defendant to suit in

the forum state's courts 'in respect to all matters, even those that are unrelated to the

defendant's contacts with the forum.'" Id. (quoting Phillips Exeter Acad., 196 F.3d at 288).

Specific jurisdiction exists "where the cause of action arises directly out of, or relates to, the

defendant's forum-based contacts." Id. (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994),

cert. denied, 514 U.S. 1108, 115 S.Ct. 1959, 131 L.Ed. 2d 851 (1995).

In the instant case, plaintiffs assert that Plantation has minimum contacts with

Massachusetts to satisfy the Due Process Clause of the Fourteenth Amendment, without

specifying whether they are claiming that specific or general jurisdiction exists.  However, since

the plaintiffs' discussion focuses on the jurisdictional prongs needed to demonstrate the

existence of specific jurisdiction (Pl. Opp. at 10-11), this court will analyze the case accordingly.

See Harlow v. Children's Hosp.  432 F.3d 50, 57 (1st Cir. 2005) ("The plaintiff need not prove the

existence of both types of jurisdiction; either one, standing alone, is sufficient.").

B.     **Specific Jurisdiction Analysis**

For purposes of the specific jurisdiction analysis, the First Circuit has "broken the

minimum contacts analysis into three categories—relatedness, purposeful availment, and

reasonableness[.]" Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007). Thus, as the Court has

explained:

> First, the claim underlying the litigation must directly arise out of, or
> relate to, the defendant's forum-state activities.  Second, the defen-
> dant's in-state contacts must represent a purposeful availment of the
> privilege of conducting activities in the forum state, thereby invoking
> the benefits and protections of that state's laws and making the defen-
> dant's involuntary presence before the state's courts foreseeable.
> Third, the exercise of jurisdiction must, in light of the Gestalt factors, be
> reasonable.

Id. (quoting Daynard, 290 F.3d at 60) (additional citation omitted).  "An affirmative finding on

each of the three elements of the test is required to support a finding of specific jurisdiction."

Phillips Exeter Acad., 196 F.3d at 288.  As detailed below, the plaintiffs have met their burden of

establishing both relatedness and purposeful availment. Moreover, the application of the

Gestalt factors to the facts of this case compels the conclusion that this court's assertion of

personal jurisdiction over Plantation is reasonable.

### Relatedness

The relatedness inquiry "is to be resolved under 'a flexible, relaxed standard.'" Baskin-

Robbins Franchising LLC, 825 F.3d at 35 (quoting Pritzker v. Yari, 42 F.3d at 61). In evaluating

relatedness, the court is mindful that "[q]uestions of specific jurisdiction are always tied to the

particular claims asserted." Phillips Exeter Acad., 196 F.3d at 289. In the instant case, plaintiffs

have asserted claims in contract and tort. In contract cases, the court must determine "whether

the defendant's contacts with the forum were instrumental either in the formation of the

12

contract or in its breach." Id.  It is appropriate to "pay particularly close attention to 'the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" Cossart v. United Excel Corp., 804 F.3d 13, 20 (1st Cir. 2015) (quoting C.W. Downer & Co. v. Bioriginal Food & Science Corp., 771 F.3d 59, 66 (1st Cir. 2014)).

In the SAC, the plaintiffs alleged that the defendant breached both express and implied warranties by selling a boat which was allegedly "improperly and unsafely wired."  (SAC ¶ 69). To the extent that this is considered to be a contract-based claim, the plaintiffs have estab- lished sufficient relatedness to satisfy due process requirements.[9]  Plantation's contacts with Massachusetts were instrumental in the formation of the contract at issue. The multi-week contract negotiations initiated by Plantation involved numerous emails from Plantation to Bohnenberger in Massachusetts and at least two phone calls – one between Warnike and Bohnenberger and one between Warnike and Smith. These communications constitute contacts for purposes of the jurisdictional analysis.[10]  See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 36 (1st Cir. 1998) ("The transmission of facts or information into Massachusetts via telephone or mail would of course constitute evidence of a jurisdictional

---

[9] The original complaint did not contain a claim for breach of warranty.  Plantation argued that in the absence of a claim for breach of contract or warranty, facts relating to the formation of the contract were irrelevant for jurisdictional purposes.  (See Def.'s Reply Mem. (Docket No. 33) at 5).  However, the SAC does contain a claim for breach of warranty, thereby rendering the facts relevant.

[10] Bohnenberger clearly attested that he received his first email communication from Plantation while he was at his home in Massachusetts.  (See Bohnenberger Aff. ¶ 8).  While he does not specifically identify his location when receiving the other emails and phone calls, given that the conversations were about his traveling from Massachusetts to Florida and the transport of his trade-in boat from Massachusetts to Florida, it is reasonable to infer that Bohnenberger was in Massachusetts for most, if not all, of these communications.

contact directed into the forum state . . . ."); <u>Workgroup Tech. Corp. v. MGM Grand Hotel, LLC</u>,

246 F. Supp. 2d 102, 113 (D. Mass. 2003) (four telephone calls, five emails, and three faxes into

the forum state for the purpose of negotiating the terms of the contract were related contacts

because they were instrumental in the formation of the contract in dispute in the litigation).

Further, Plantation's contacts with Massachusetts were related to the performance and

alleged breach of the contract.  According to the plaintiffs, the contract required Plantation to

perform any necessary warranty work on the vessel in Massachusetts, and Plantation –

allegedly in the performance of its contractual duties – did perform repair work on the vessel in

Massachusetts and did subcontract with other entities to do so over the course of two and a

half years. These acts constitute contacts with Massachusetts for purposes of the jurisdictional

analysis. <u>See</u> <u>C.W. Downer & Co.</u>, 771 F.3d at 66 (holding that plaintiff satisfied relatedness

requirement where evidence showed that defendant had "an ongoing connection with

Massachusetts in the performance under the contract[,]" and that plaintiff's claims arose "from

the alleged breach of that contract"). In sum, the facts alleged by the plaintiffs constitute

enough evidence to satisfy the "flexible" and "relaxed" relatedness requirement for the

contract claim. <u>Pritzker</u>, 42 F.3d at 61.

The plaintiffs have also asserted claims in tort, including negligence and strict liability.

When assessing personal jurisdiction in tort cases, the First Circuit has declined to require strict

adherence to a proximate cause standard, instead applying a "small overlay of 'but for' on

'proximate cause'" with the rationale that

> [w]hen a foreign corporation directly targets residents in an ongoing effort to
> further a business relationship, and achieves its purpose, it may not
> necessarily be unreasonable to subject that corporation to forum jurisdiction
> when the efforts lead to a tortious result. . . . If the resident is harmed while

> engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage.

Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 715–16 (1st Cir. 1996).  Here, Plantation targeted a Massachusetts resident, the tortious conduct on the part of the defendant was integral to the targeted relationship and took place in Massachusetts, and the harm occurred in Massachusetts.  These facts are sufficient to meet the First Circuit's modification of the proximate cause standard for relatedness set forth in Nowak.  See id. at 716 (Massachusetts could exercise personal jurisdiction over foreign hotel in a wrongful death action where hotel's solicitation of guest in Massachusetts "set in motion a chain of reasonably foreseeable events" that resulted in guest's wife drowning in hotel swimming pool).  By reaching into Massachusetts to sell a vessel that would be docked in Massachusetts, by promising to do warranty work in Massachusetts, and by making repairs to that vessel in Massachusetts, Plantation "set in motion a chain of reasonably foreseeable events" leading to the fire that consumed the vessel and other property in Massachusetts. Id. See Edwards v. Radventures, Inc., 164 F. Supp. 2d 190, 198 (D. Mass. 2001) (finding relatedness where defendant foreign corporation approached Massachusetts plaintiff for sale of an allegedly defective monoski in Colorado, sale was consummated when plaintiff faxed order form from Massachusetts to defendant in Oregon, and plaintiff sued defendant for personal injuries caused by defect in monoski); Pike v. Clinton Fishpacking, Inc., 143 F. Supp. 2d 162, 169 (D. Mass. 2001) (finding relatedness where defendant foreign corporation recruited plaintiff from Massachusetts to work on a fishing boat off the coast of Alaska and plaintiff sued defendant for personal injuries sustained while employed on defendant's boat).

15

Finally, Plantation argues that the plaintiffs "have not alleged that Plantation in fact worked on the electrical components claimed to be the cause of the fire." (Def.'s Reply Mem. (Docket No. 33) at 5-6). However, in the SAC, plaintiffs have alleged that "Defendant so negligently and carelessly designed, manufactured, constructed, assembled, inspected, installed (electrical components), maintained and sold the vessel that it was rendered dangerous and unsafe for its intended uses." (SAC ¶ 57). Plaintiffs alleged further that "[t]he Vessel was defective and unreasonably dangerous in that it was improperly wired, with the wires being allowed to chafe and expose bare wires, causing a spark that ignited the subject fire." (Id. ¶ 62). These factual allegations, while disputed, are sufficient to satisfy the relatedness prong of the jurisdictional analysis.

## Purposeful Availment

The evidence of Plantation's contacts with Massachusetts also fulfills the purposeful availment prong of the jurisdictional inquiry. "The purposeful availment inquiry . . . focuses on the defendant's intentionality. This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Swiss Am. Bank, Ltd., 274 F.3d at 623-24 (internal citation omitted). Accordingly, purposeful availment occurs "when a defendant deliberately targets its behavior toward the society or economy of a particular forum [such that] the forum should have the power to subject the defendant to judgment regarding that behavior." Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st. Cir. 2011) (citing J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 881, 131 S.Ct. 2780, 2787-88, 180 L.Ed. 2d 765 (2011)). "The enforcement of personal jurisdiction over a non-resident defendant

is foreseeable when that defendant has established a continuing obligation between itself and the forum state." <u>Sawtelle</u>, 70 F.3d at 1393.

Plantation's contacts with the forum state were both voluntary and foreseeable. Plantation purposefully reached out of Florida to solicit Bohnenberger in Massachusetts for the sale of the vessel, thereby satisfying the voluntariness requirement. <u>See</u> <u>Nowak</u>, 94 F.3d at 716-17 (stating "In order to be subject to Massachusetts' jurisdiction, a defendant need only have one contact with the forum state, so long as that contact is meaningful" and finding foreign defendant's unprompted solicitation which was designed to facilitate a business relationship with in-forum plaintiff to satisfy the voluntariness requirement of the purposeful availment test).

According to the plaintiffs, Plantation promised, in consideration for the sale of the vessel, to service the vessel in the forum post-sale, creating a continuing relationship with the forum. Plantation, disputing that it promised to service the vessel in the forum, argues that its conduct is akin to having merely placed the vessel into the "stream of commerce."  (Plantation Reply Br. (Docket No. 33) at 7) (citing <u>J. McIntyre Mach., Ltd.</u>, 564 U.S. 873, 131 S.Ct. 2780)). This court disagrees. This court must take the plaintiffs' well supported facts as true — the fact that Plantation does not agree with the plaintiffs' allegations does not defeat jurisdiction.  <u>See</u> <u>United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.</u>, 987 F.2d 39, 44 (1st Cir. 1993) (in assessing a *prima facie* challenge to personal jurisdiction, "the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its rulings as a matter of law"). The record before this court is that Plantation solicited a Massachusetts resident for the purchase of the vessel that would be docked in

17

Massachusetts, promised to perform all warranty work on the vessel in Massachusetts, performed repair work on the vessel in Massachusetts, and subcontracted and/or coordinated to have more repair work performed on the vessel in Massachusetts. Thus, Plantation established a continuing obligation between itself and the forum, making jurisdiction foreseeable. See Sawtelle, 70 F.3d at 1393; see also Wolverine Procter & Schwartz, Inc. v. Aeroglide Corp., 394 F. Supp. 2d 299, 310 (D. Mass. 2005) (finding foreseeability requirement of the purposeful availment test satisfied where foreign defendant established a continuing obligation between itself and a Massachusetts-based company when it entered into a three-year obligation not to misuse plaintiff's confidential information or solicit its employees). These allegations are sufficient to support the conclusion that Plantation purposefully and voluntarily directed its activities towards the forum and "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (quotation and citation omitted). Accordingly, the plaintiffs have made the showing necessary to satisfy the purposeful availment requirement of the jurisdictional test.

### Gestalt Factors

If the first two parts of the test for specific jurisdiction are fulfilled, the court must determine whether the exercise of personal jurisdiction is reasonable in light of the so-called "Gestalt factors." Sawtelle, 70 F.3d at 1394.  This requires the court to consider "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." Id.

The application of the Gestalt factors to the facts of this case further weighs in favor of exercising personal jurisdiction over Plantation. With respect to the first factor – the defendant's burden of appearing – this court finds that the burden on Plantation would not be significant. Although the need to defend an action in a foreign jurisdiction "is almost always inconvenient and/or costly . . . this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker, 42 F.3d at 64. Here, Plantation asserts no special burden it would encounter in litigation out of state, nor does the record reveal a greater burden on Plantation appearing in Massachusetts than the plaintiffs would suffer appearing in Florida.  Plantation does suggest that it would be burdensome for Plantation personnel to appear and attend proceedings in Massachusetts.  However, this case does not involve a significant number of out-of-state witnesses.  Moreover, it may be possible for some witnesses to appear by deposition if necessary. As Plantation "does not allege anything 'special or unusual' about its situation other than the ordinary inconvenience of litigating an action in another state" this factor does little to undermine the reasonableness of exercising personal jurisdiction over Plantation in this case. Hasbro, Inc. v. Clue Computing, Inc., 994 F. Supp. 34, 45 (D. Mass. 1997).

The second Gestalt factor, concerning the forum state's interest in adjudicating the dispute, weighs heavily in favor of keeping the lawsuit in Massachusetts. It is clear that Massachusetts "has a strong interest in protecting its citizens from out-of-state solicitations for goods or services that prove to be unsafe." Nowak, 94 F.3d at 718. It also "has a significant interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders." Id. (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 211 (1st Cir. 1994). See

also Pike, 143 F. Supp. 2d at 170 ("Massachusetts has a significant interest in ensuring its residents are not injured by negligence"). Massachusetts has a strong interest in obtaining jurisdiction over Plantation as plaintiffs allege that Plantation's negligent repair work in Massachusetts caused a fire that destroyed property in Massachusetts.

The third Gestalt factor is the plaintiff's interest in obtaining convenient and effective relief. The First Circuit has repeatedly observed that "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle, 70 F.3d at 1395. Thus, this factor weighs in favor of maintaining the litigation in Massachusetts, where plaintiffs' witnesses and other relevant evidence are located.

The fourth Gestalt factor, concerning the judicial system's interest in obtaining the most effective resolution of the case, is generally considered "a wash." Baskin-Robbins, 825 F.3d at 41 (citing Sawtelle, 70 F.3d at 1395). "Even though Massachusetts courts can effectively administer justice in this dispute, they have no corner on the market." Id.

The final factor concerns the interests of affected states in promoting substantive social policies. As noted earlier, Massachusetts has a clear interest in protecting its citizens from foreign providers of goods and services and in affording those citizens a convenient forum in which to bring their claims. On the other hand, Florida has an interest in adjudicating claims relating to businesses based within its borders. Therefore, this factor does not weigh in favor of one forum over another.

In sum, although it may be somewhat inconvenient for Plantation to defend this case in Massachusetts, the inconvenience is not significant. Moreover, where the remaining Gestalt factors relevant to this case weigh in favor of jurisdiction or are neutral, the maintenance of the

lawsuit against Plantation in Massachusetts "would comport with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476, 105 S.Ct. 2184 (quoting Int'l Shoe Co., 326 U.S. at 320, 66 S.Ct. at 160).

As detailed above, the record shows that Plantation purposefully established minimum contacts in Massachusetts such that this court's exertion of specific personal jurisdiction over the defendant would not offend due process. Therefore, this court recommends that this matter remain in Massachusetts and that Plantation's motion to dismiss for lack of personal jurisdiction be denied.

## IV.  CONCLUSION

For all the reasons set forth herein, this court recommends to the District Judge to whom this case is assigned that "Defendant, Plantation Boat Mart and Marina Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction" (Docket No. 25) be DENIED.[11]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[11] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).